# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CATHRYN L. LEWIS,

                    Plaintiff,

-vs-                                                    Case No.  6:06-cv-1408-Orl-UAM

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

## MEMORANDUM OF DECISION

     Plaintiff Cathryn L. Lewis  ["Lewis"] appeals to the district court from a final decision of

the Commissioner of Social Security [the "Commissioner"] denying her application for disability

insurance benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the

Commissioner's decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY

     Lewis filed an application for Disability Insurance Benefits (DIB) on September 12, 1996,

with an onset date of July 19, 1996.  R. 46.  An initial hearing was held on July 15, 1998, and the

Honorable Charles D. Romo, Administrative Law Judge (ALJ) issued an Unfavorable Notice of

Decision on December 24, 1998.  R. 313-324.  Lewis filed a Request for Review with the Appeals

Council, which ultimately resulted in the Appeals Council remanding the matter to the ALJ with

with instructions to conduct further proceedings.  R. 325-329.  The Honorable Philemina M. Jones,

ALJ conducted an 80-minute supplemental hearing on October 22, 2003, and Lewis was

represented by counsel.  R. 426-74.  The ALJ heard testimony from both Lewis and Mr. Agrusa, a vocational expert ("VE").

On January 23, 2004, the ALJ issued a decision that Lewis was not disabled and not entitled to benefits.  R. 19-30.  Following a review of the medical and other record evidence, the ALJ found that Lewis could perform her past relevant work as a licensed massage therapist, a chiropractic assistant, a bus attendant, a scheduler/dispatcher, a law enforcement records clerk, or as a communications officer.   R. 29, Finding 8.

The Appeals Council denied review on July 21, 2006.  R. 9-11.  On September 15, 2006, Lewis timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On January 15, 2007, Lewis filed in this Court a memorandum of law in support of her appeal.  Docket No. 15.  On March 16, 2007, the Commissioner filed a memorandum in support of her decision that Lewis was not disabled.  Docket No. 17.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Lewis assigns three errors to the Commissioner.  First, Lewis claims that the Commissioner erred in failing to weigh properly the opinion of Lewis's treating physician, Dr. Weiss.  Second, Lewis claims that the ALJ erred in finding that her mental impairments were not severe.  Third, Lewis claims that the ALJ improperly discounted her credibility.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that the ALJ properly discounted Dr. Weiss's opinion as being inconsistent with diagnostic and clinical findings, as well as opinions of other physicians, Lewis' s sporadic conservative treatment and Lewis's work activity.  Docket 17 at 9.  Second, the

Commissioner argues that substantial evidence supported the ALJ's finding that she did not have a severe mental impairment.  Third, the Commissioner argues that the ALJ properly discounted Lewis's subjective complaints.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.     REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

**C.     REMAND**

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported

by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

-5-

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is

new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that

there is a reasonable possibility that it would change the administrative result; and 3.) there is good

cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 -

92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547,

1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v.*

*Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the

Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at

1095.  With a sentence-six remand, the parties must return to the district court after remand to file

modified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending

remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

## V.    APPLICATION AND ANALYSIS

### A.    THE FACTS

Lewis was born in 1956, and was 47 years old on the day of the supplemental hearing.

R. 46.  Lewis is a high school graduate.  R. 85.  Lewis has past relevant work as a massage

therapist, a records clerk and a communications officer.  *Id.*

On July 19, 1996, Lewis was seen in the emergency room following an automobile

accident in which she rear-ended another car.  R 109-11.  Lewis stated that her seat belt failed, and

that she hit her head on the windshield.  R. 111.  She complained of low back pain and pain in the

pelvic area.  *Id*.  Skull x-rays were negative.  R. 115.  X-rays of the cervical area showed a mild

degenerative change and no fractures.  R. 113.  X-rays of the lumbrosacral area showed mild

levoconvexed curvature and no fractures.  R. 114.  She was diagnosed with acute cervical strain,

lumbosacral strain and contusion to the head.  R. 111.

On July 20, 1996, Lewis saw chiropractor Shawn Egan, P.A.  R. 169-70.  At that time,

Lewis complained of severe neck and upper back pain, headaches, and left-sided lower back pain.

R. 169.  Dr. Egan diagnosed acute post traumatic cervical, thoracic and lumbar sprain/strain,

cephalgia and head and throat impact injuries.  R. 170.  She was cleared to return to work the

following Monday, to rest and use moist heat, and to wear her cervical collar.  *Id.*  On Wednesday,

July 24, 1996, Dr. Egan authorized Lewis to stop working for one month.  R. 167.  An MRI was

taken on August 12, 1996, revealing no HNP [herniated nucles pulposus], bulging disc in cervical

spine.  R. 162.

On September 12, 1996, Dr. Egan noted that Lewis had not performed housework or

yardwork since the accident (R. 154), and that she was still unable to work due to her injuries.

R. 155.  On November 15, 1996, Lewis complained of neck, mid and lower back pain, headaches,

difficulty sleeping, numbness in her right upper arm, making work "impossible."  R. 142.

Dr. Egan treated Lewis until December 4, 1996, with various modalities including heat, massage,

electrical stimulation and ultrasound.  R. 139-170.  Lewis also received massage therapy from

Cheryl Meek, L.M.T. from July 31, 1996 to October 17, 1996.  R. 124-138.

On July 30, 1996, Lewis began treatment with Richard J. Lapp, D.O.  R. 183.  On the first

visit, Dr. Lapp completed a Physician's Statement of Certification for the State of Florida's

Department of Highway Safety and Motor Vehicles.  R. 182.  The form certified that Lewis was

temporarily disabled from July 30, 1996 to October 30, 1996, due to a severe limitation in her ability to walk due to an arthritic, neurological or orthopedic condition.  *Id*.  A cervical MRI dated August 13, 1996, showed posterior disc bulges with thecal sac flattening at C6-7 and C5-6 with an anterior disc protrusion at C6-7.  R. 179-180.

On September 11, 1996, clinical psychologist Scott Kaplan, Psy.D. examined Lewis. R. 204-206.  Lewis's neurobehavioral functions and cognitive abilities were within normal limits. R. 206.  Based on an MMPI test, Dr. Kaplan concluded that Lewis suffered from "clinically significant levels of severe depression" accompanied by feelings of inadequacy, pessimism, negative thinking and worrisomeness.  R. 205.  Testing revealed that the Lewis was likely to experience sleep and appetite disturbances, reduced energy level, lethargy, fatigue, apathy and psychomotor slowing.  *Id*.  Dr. Kaplan noted that the Lewis "made a realistically honest attempt at answering the items truthfully and accurately" and that her MMPI profile was valid.  *Id.* Dr. Kaplan opined that Lewis's symptomology was consistent with a diagnosis of Major Depressive Episode, Severe.  *Id.*  He recommended that Lewis be treated with antidepressants and psychotherapy.  *Id*.

On September, 12, 1996, neurologist Gary Weiss, M.D. evaluated Lewis for her neck pain, headaches and back pain.  R. 200-202.  Lewis reported constant aching neck pain with occasional sharp pain with pain radiating to her right arm with tingling, numbness and weakness.  R. 200. She reported low back pain with radiation to her hips, right leg and both feet with numbness and tingling in her upper legs.  *Id*.  Lewis also reported headaches in the frontal area or occipital area. *Id*.  Upon examination, Dr. Weiss assessed decreased short term memory.  R. 201.  Strength in her

right triceps was decreased 0-1/4 and -1/4 in right finger extensors. *Id*. Reflexes were hypoactive -2/4 in right triceps, 0-1/4 in right brachioradialis and -2/4 in right external hamstring. *Id*. Her sensation was decreased to pin and touch -2/4 in a right C7 distribution and to pin -1/4 in right L5-S1 distribution. *Id*. Lewis's cervical and lumbar spinal motions were decreased with muscle spasms and tenderness present. R. 202. Dr. Weiss diagnosed concussion with post-traumatic headaches, decreased memory, visual blurring and dizziness, herniated discs at C6-7, bulging disc at C5-6, right C7 radiculopathy, and low back pain with right L5-S1 radiculopathy. *Id*. Dr. Weiss opined that Lewis was Temporarily Totally Disabled (TTD). *Id.*

Dr. Weiss ordered additional objective testing. A Quantitative Electroencephalogram (QEEG) dated September 30, 1996, was abnormal and positive for head trauma with eighty percent accuracy. R. 197. A Visual Evoked Potentials test on September 30, 1996, showed normal and symmetric results. R. 195. A Brainstem Auditory Evoked Potentials test on September 30, 1996, showed normal and symmetric results. R. 193. An Electromyography (EMG) dated October 3, 1996, evidenced right C7 radiculopathy. R. 191. A nerve conduction study dated October 3, 1996, was within normal limits. R. 190.

On January 23, 1997, Lewis returned to Dr. Weiss with complaints of worsening neck pain and constant ache in her low back. R. 184. A neurologic examination revealed no change. *Id*. Dr. Weiss opined that Lewis remained totally temporarily disabled. *Id.* He also opined that Lewis was physically unable to complete extensive paper work due to herniated nucles pulposus [HNP] in cervical spine with right upper extremity radiculopathy. R. 185.

In a letter dated February 6, 1997, Dr. Kaplan stated, "Cathy has been under my care since September of 1996 and continues to treat at the present time. She suffers from a severe clinical depression as well as chronic pain syndrome." R. 203. Dr. Kaplan opined that Lewis was unable "to deal with any type of legal deposition and/or re-trial." The administrative record contains no treatment notes showing the nature or frequency of Dr. Kaplan's treatment, although the letter lists the psychotropic medications Lewis was taking.

On July 16, 1997, Robert Mixco, M.D. conducted an Independent Medical Evaluation (IME) of Lewis's neurological condition. R. 231-235. On examination, Dr. Mixco assessed decreased range of motion of the neck of about 20 degrees to the right, slightly decreased muscle strength of the right upper extremity (4/5), slight weakness of the right lower extremity (4/5) and slight decreased of pin prick sensation in the right upper extremity without any particular dermatone distribution. R. 233. Dr. Mixco noted significant improvement with the medical exercise program supervised by Dr. Fulton. R. 234. Dr. Mixco opined that while Lewis was probably ready to return to work, she was not ready for "full duty." R. 235. Dr. Mixco recommended a physical capacity assessment to define actual work limitations. *Id.*

On December 11, 1997, Lewis reported improvement in her neck and back pain and her headaches. R. 291. She also denied depression. R. 291. Lewis reported part-time work eight hours a week doing paper work. *Id.*

On March 5, 1998, Lewis reported that "her neck pain is not as good since she is working 2-4 hours daily doing data entry and answering phones." R. 290. She reported that her low back pain comes and goes. *Id.* She has daily headaches with varying severity, but she denies

-10-

depression.  *Id*.  Dr. Weiss recommended restarting a rehabilitation program for a period of six to twelve months.  *Id.*

On April 7, 1999, Lewis went to Circles of Care to obtain antidepressant medication for depression.  R. 412.  There was no indication on the intake assessment form that Lewis received any medication at that time.  R. 411.

On September 30, 1999, Lewis returned to Circles of Care.  R. 410.  She was not evaluated by a physician until October 19, 1999.  At that time, psychiatrist S. Vasudevan, M.D. evaluated Lewis.  R. 405-407.  Lewis reported depression associated with back pain, inability to work and financial problems.  R. 405.  Lewis appeared depressed and tearful.  R. 406.  Memory functioning for recent events was impaired.  *Id*.  She was not suicidal, hallucinating or delusional.  R. 406.  Dr. Vasudevan diagnosed depressive disorder NOS and organic mental disorder with a GAF score of 45.[1]  *Id*.  Dr. Vasudevan prescribed Paxil.  R. 407.

On October 15, 1998, Edward Swan, M.D. conducted of consultive physical examination of Lewis.  R. 306-311.  Dr. Swan noted that the MRI of the cervical spine which she brought with her showed very mild degenerative changes while the MRI of the lumbrosacral spine showed no abnormality.  R. 308.  Dr. Swan reported that Lewis was able to move with ease during her examination, including getting onto and off the examination table.  She was also able to dress and undress without difficulty.  R. 307.  Lewis had good reflexes in her arms and hands.  The range of motion in her neck was compromised.  R. 308.  Lewis's straight leg raising test was normal.

---

[1]The Global Assessment of Functioning ["GAF"] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (American Psychiatric Association 4th Ed. 1994) ["DSM-IV"] at 32.  A GAF code of 41 - 50 indicates serious symptoms, or serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job).  DSM-IV at 32.

R. 307.  Dr. Swan opined that Lewis had a soft tissue type cervical strain, but there was no

evidence of orthopaedic impairment at that time.   R. 308.  Lewis's ability to sit, stand or walk, as

well as to lift and carry, were unimpaired.  R. 309, 310.

On July 7, 2003, Lewis sustained injuries in a second automobile accident.  R. 356.  On

August 21, 2003, Lewis was evaluated by pain management physician Todd Jaffe, M.D.  R. 370.

Lewis reported low back pain, right foot pain, right knee pain, neck and left upper arm pain.

Lewis reported that she could ignore the discomfort caused by the pain while she was seated.  *Id*.

A cervical MRI dated August 11, 2003, showed cervical spondylosis at C6-7 causing mild bilateral

foraminal narrowing slightly more severe on the right.  *Id*.  A lumbosacral MRI dated the same

showed a probable variant of the left S1 nerve root and mild degenerative changes at L3-4.  *Id*.

There was no focal herniated nucleus pulposus.  *Id*.  Dr. Jaffe diagnosed cervical spondylosis at

C6-7 with cervical muscle spasm and cervical and lumbar strain.  R. 371.  Dr. Jaffe opined that

Lewis would need assistance with heavy housework and yard work for approximately one month.

*Id*.

On September 18, 2003, Dr. Weiss examined Lewis.  R. 356-59.  Lewis complained of

daily headaches, rating her pain 5/10, neck pain (4/10), occasional mid back aches (4/10, and

constant low back pain (6/10).  R. 356-57.  Lewis stated the low back pain increases if she is

sedentary.  R. 357.  Lewis also complained of occasional left knee pain (4/10).  *Id*.  Dr. Weiss

determined that Lewis's memory and other cortical functions were grossly intact.  R. 358.  He

assessed hypoactive reflexes -1/4 in the left triceps and left brachioradialis, and decreased pin

prick sensation in a C6, 7 and L4 distribution.  R. 358.  Lewis displayed decreased cervical,

thoracic and lumbar spinal motions with muscle spasms and tenderness.  R. 359.  Dr. Weiss

diagnosed herniated nucleus pulposus C6-7 greater than C5-6 with left greater than right

radiculopathy, bulging L3-4, thoracic spine pain and post-traumatic headaches with decreased

memory.  *Id.*  An MRI of the thoracic spine dated September 29, 2003, revealed a bulging disc at

T9-10.  R. 361.  A QEEG dated September 29, 2003, was abnormal as was a 16 channel EEG

dated the same.  R. 362-63.

On October 21, 2003, Dr. Weiss completed a Physical Restrictions Evaluation (PRE)

covering a period from September 1996 to December 1998.  R. 366-368.  Dr. Weiss opined that

Lewis could only sit for 30 minutes without interruption, stand for 30 minutes without interruption

and walk 15 minutes without interruption.  R. 366.  Dr. Weiss stated that Lewis needed to change

positions every thirty minutes for a duration of 15 minutes.  *Id*.  Lewis needed to lie down several

times a day for a duration of 10 to 15 minutes at a time.  *Id*.  She should never stoop, crouch,

kneel, crawl, twist or reach.  R. 367.  She was limited to 30 minutes of simple grasping and

pushing and pulling with both the left and right hand.  *Id*.  She was precluded from fine finger

manipulation.  *Id*.  She was also restricted from lifting over 10 pounds.  *Id.*

> **B.   THE ANALYSIS**
>
> **1.    Discounting the Weight of Dr. Weiss's Opinion**

In determining Lewis's RFC, the ALJ gave "great weight" to Dr. Swan's opinion because it

was based on diagnostic and clinical findings rather than subjective complaints of pain.  The ALJ

gave "lesser weight" to Dr. Weiss's opinion, "not only because it is based primarily on subjective

complaints of pain, but also because it is inconsistent with the diagnostic and clinical findings in

the record." R. 28.  Lewis argues that the ALJ failed to consider the objective medical tests that

supported Dr. Weiss's opinion.  Lewis cites three medical tests that the ALJ allegedly failed to

consider: the August 13, 1996 cervical MRI, the September 30, 1996, QEEG, and the October 3,

1996, EMG.  Docket 15 at 9.

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight

to the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*,

786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir.

1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Comm'r of Social*

*Security*,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating

physician's opinion on the nature and severity of a claimant's impairments is well-supported by

medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the

other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R.

§ 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to

work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*,

937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure

of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion

if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such

weight as is supported by clinical or laboratory findings and other consistent evidence of a

claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner.  20 C.F.R. § 404.1527(e).

Initially, Lewis is incorrect that the ALJ failed to consider the cervical MRI results.  The ALJ discussed those results at R. 24.  Lewis, however, is correct that the ALJ failed to discuss the EMG and QEEG results.  There is "no rigid requirement that the ALJ specifically refer to every

piece of evidence" in the decision, so long as the decision shows enough to conclude that the ALJ

considered the claimant's condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.

2005).  In reviewing the ALJ's entire decision, the Court is convinced that the ALJ considered

Lewis's condition as a whole.

Although objective tests confirmed bulging discs and right radiculopathy, it is apparent that

Dr. Weiss's restrictions were based on Lewis's subjective complaints about the extent of her pain.

Lewis's subjective complaints about pain were inconsistent with the objective testing performed

by Dr. Mixco and Dr. Swan.  These other objective tests provided sufficient basis for the ALJ to

conclude that Dr. Weiss's opinion was inconsistent with the medical evidence as a whole.  The

ALJ, therefore, did not err in discounting Dr. Weiss's opinion.

### 2.      The Severity of Lewis's Mental Impairments

The ALJ found that the "longitudinal record reveals no evidence of a severe medically

determinable mental impairment that has lasted for 12 consecutive months."  R. 27.  Lewis

contends this finding was erroneous.

The evaluation of disability on the basis of mental disorders requires the documentation of

a medically determinable impairment, as well as consideration of the degree of limitation such

impairment may impose on the individual's ability to work.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

For mental disorders, severity is assessed in terms of the functional limitations imposed by the

impairment.  Functional limitations are assessed using the criteria in paragraph B of the listings for

mental disorders (activities of daily living; social functioning;  concentration, persistence, or pace;

and ability to tolerate increased mental demands associated with competitive work).  A "marked"

degree of limitation means more than moderate, but less than extreme.  A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

The presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals and clinics.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Information from both medical and non-medical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning;  concentration, persistence and pace;  or ability to tolerate increased mental demands (stress).

An individual's level of functioning may vary considerably over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor.  Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  This evidence should include treatment notes, hospital discharge summaries, and work evaluation or rehabilitation progress notes if these are available.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Some individuals may actually have worked during the period of time pertinent to the determination of disability.  Information concerning the individual's behavior during any attempt to work and the circumstances surrounding termination

of the work effort are particularly useful in determining the individual's ability or inability to function in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Dr. Kaplan diagnosed Lewis as being clinically depressed on September 11, 1996, and recommended that she be treated with antidepressants and psychotherapy. R. 204-206. Despite the diagnosis of depression, Lewis's neurobehavioral functions and cognitive abilities were within normal limits. R. 206. In a letter dated February 6, 1997, Dr. Kaplan stated, "Cathy has been under my care since September of 1996 and continues to treat at the present time. She suffers from a severe clinical depression." R. 203. The only functional limitation described by Dr. Kaplan was Lewis's inability "to deal with any type of legal deposition and/or re-trial." *Id*.

By December 11, 1997, Lewis was working part-time, and denied being depressed. R. 291. On March 5, 1998, Lewis was till working part-time and reported that she was not depressed. R. 290. Although Lewis made some minimal effort to receive treatment in April 1999 for depression, she did not follow through until October 19, 1999. R. 405-407. By November 16, 1999, Lewis reported that she was less depressed, and denied suicidal thoughts, hallucinations, or mood swings. R. 404. She was oriented to time, place and person, and her sensorium was clear. *Id*. Her judgmental reasoning abilities were fair. *Id.* She was continued on Paxil with a plan to be seen every other month. R. 404. She was to continue with group and individual therapy. *Id*.

Other than the one note that she was unable to be deposed in litigation, there are no records regarding any limitations caused by Lewis's depression. Without a showing of functional limitation or the severity of the limitation, the ALJ did not err in finding a lack of evidence of severe mental impairment.

-18-

### 3.      **Discounting of Lewis's Subjective Complaints**

The ALJ found that Lewis's testimony as to her pain and limitations was somewhat exaggerated and disproportionate to the diagnostic and clinical findings. R. 27. Lewis contends the ALJ erred because the ALJ failed to specify what testimony was exaggerated. Docket 15 at 14.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Lewis testified that she has pain in her shoulders, right arm and low back.. R. 445. She claimed she experienced daily headaches with associated nausea and vomiting. R. 443-447. Lewis further testified that she takes medication for the pain which causes lightheadedness. R. 443. When she takes her pain medication, she has to lie down. *Id*. She testified that "she can't do anything around the house or operate a vehicle" when she takes the medication. *Id*. Lewis also stated that she has decreased memory and loses her train of thought easily. R. 446.

While the ALJ acknowledged that Lewis has had some back and neck pain as well as intermittent headaches at times, particularly following her two automobile accidents, the ALJ

pointed to the evidence that showed Lewis's condition improved with treatment after each

accident.  The ALJ specifically referred to evaluations by Dr. Swan, Dr. Mixco and Dr. Jaffe.

R. 27.  The ALJ also found it noteworthy that Lewis had no significant treatment for back and

neck pain during 1999, 2000, 2001 or 2002, and did not seek additional treatment until she had her

second motor vehicle accident in 2003.  R. 28.  With respect to Lewis's alleged loss of recall

ability and losing her train of thought, the ALJ found this testimony was inconsistent with

Dr. Kaplan's diagnostic testing showing no evidence of memory dysfunction and normal cognitive

abilities.  R. 28.

The Court finds that the ALJ clearly articulated her credibility finding and that the finding

was supported by substantial evidence.  The Court finds no error by the ALJ in her findings.

**VI.**     **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The Clerk

should enter a separate judgment in favor of Defendant and close the case.

**DONE AND ORDERED** on August 22, 2007.

*Donald P. Dietrich*

DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Nadine Deluca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

-20-

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817